FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ NOV 0 2 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
KEVIN CROWDER,

                        Petitioner,

       -against-

SUPERINTENDENT ROBERT ERCOLE,

                        Respondent.
--------------------------------------------------------X

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
09-cv-3401 (CBA)

**AMON, Chief United States District Judge**.

## INTRODUCTION

Petitioner Kevin Crowder, *pro se*, brings this petition pursuant to 28 U.S.C. § 2254. He challenges his conviction in New York state court on the grounds that (1) the trial court's admission of evidence of Crowder's history of abusing the victim violated his right to due process; (2) the trial court's admission of a recording of a 911 phone call violated his rights under the Confrontation Clause of the Sixth Amendment; (3) his trial counsel provided ineffective assistance in violation of the Sixth Amendment; (4) his appellate counsel provided ineffective assistance in violation of the Sixth Amendment; (5) New York's persistent felony offender statute ("PFO statute") under which he was sentenced violates the Sixth Amendment; (6) application of the PFO statute to him was in error because he was never formally adjudicated a second violent felony offender; and (7) the trial court lacked jurisdiction because the indictment cited the incorrect penal code section for his criminal contempt charge. Respondent filed an opposition to this petition and Crowder filed a traverse in response. Respondent, at the Court's request, filed a supplemental submission opposing the petition, and Crowder filed a letter with the Court in response. For the reasons set forth below, the petition is denied.

## BACKGROUND

Between October 31 and November 14, 2001, Crowder stood trial in the Supreme Court of the State of New York, Kings County, for charges arising out of incidents on two separate dates. The first alleged incident took place on March 30, 2000. On that date, Crowder allegedly broke into an apartment at 600 Chester Street in Brooklyn, NY, and dragged Ann Lewis, who had obtained an order of protection against him, out of the apartment by her hair. Police found Lewis two days later with abrasions on her face, neck, and arms and puncture wounds throughout her body.

The other incidents out of which the charges against Crowder arose occurred on March 18, 2001. At 9:30 p.m. on that date, Crowder confronted his mother, Stella James, about whether she had aided police investigations into his assaults on Ann Lewis. He allegedly attempted unsuccessfully to stab James in the chest with a knife. Also on that date, at approximately 11:00 p.m., Crowder allegedly struck Ann Lewis on the head with a brick and attempted to gouge her eye out with his fingers. Lastly, the prosecution alleged that Crowder entered the apartment at 600 Chester Street, woke up Joseph Lewis, who lived there, asked Mr. Lewis if he had gone to court to testify against him, and told Mr. Lewis "if I get locked up, then my brother's going to come after you." (Trial Tr. at 175, 237.)

Crowder was convicted by a jury of one count of Burglary in the Second Degree, N.Y. Penal Law § 140.25(2), for breaking into the apartment at 600 Chester Street on March 30, 2000; one count of Criminal Contempt in the First Degree, N.Y. Penal Law § 215.51(b)(v), for his March 30, 2000 violation of the order of protection; and two counts of Assault in the Third Degree, N.Y. Penal Law § 120.00, one for each of the March 18, 2001 incidents with Ann Lewis and James.

On December 4, 2001, Crowder was adjudicated a persistent violent felony offender and was sentenced to an indeterminate term of imprisonment of twenty-five years to life for the burglary conviction, a concurrent indeterminate term of two to four years for the criminal contempt conviction, and concurrent determinate terms of one year on each of the assault convictions. On appeal, the Appellate Division affirmed the judgment of conviction but vacated Crowder's sentence because of a procedural error in the persistent violent felony offender determination. *People v. Crowder*, 782 N.Y.S.2d 128 (2d Dep't 2004). On December 8, 2004, Crowder was again adjudicated a persistent violent felony offender and received the same sentence. His appeal of this sentence was denied. *People v. Crowder*, 848 N.Y.S.2d 886 (2d Dep't 2008).

Crowder also filed a motion under N.Y. C.P.L. § 440.10 to vacate the judgment, and a petition for a writ of error coram nobis, both of which were denied. *See People v. Crowder*, 790 N.Y.S.2d 825 (Kings Cty. Sup. Ct. 2004) (denying § 440.10 motion); *People v. Crowder*, 866 N.Y.S.2d 879 (2d Dep't 2008) (denying *coram nobis* petition).

## DISCUSSION

### I.   *AEDPA Standard of Review*

A petitioner in state custody pursuant to a criminal judgment of a state court is entitled to federal habeas relief only if he can establish that he is being confined in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court may grant relief from a state court's "adjudication on the merits" only if it resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d)(1)-(2). "[I]t may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 131 S. Ct 770, 784-85 (2011).

The Supreme Court has said that "clearly established federal law" means "the holdings, as opposed to the dicta," of its decisions at the time of the state court adjudication. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A ruling on the merits is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or . . . decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Id.* at 412-13. A ruling is an "unreasonable application" of clearly established Supreme Court precedent if it "applied [Supreme Court law] to the facts of [the] case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87. The Court is mindful that, as with all *pro se* pleadings, a habeas petition filed *pro se* is to be construed liberally. *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983).

## II.   *Admission of Evidence of Past Abuse of Ann Lewis*

Crowder's first claim is that the trial court violated his right to due process of law by admitting evidence of his past violence towards Ann Lewis, the victim of one of the assaults of which Crowder was convicted. Crowder raised this claim on direct appeal, Brief for Defendant-Appellant, DE 12-6, at 21-31, and the Appellate Division rejected it on the merits, *Crowder*, 782

4

N.Y.S.2d at 128. *See Harrington*, 131 S. Ct 784-85 (summary disposition constitutes decision on the merits). The Appellate Division's decision is therefore entitled to AEDPA deference.

Before Crowder's trial, the prosecution made an application to the trial court to introduce evidence of twelve prior incidents of Crowder's violence towards Ann Lewis. The trial court held a hearing pursuant to *People v. Molineaux*, 168 N.Y. 264 (1901), during which the application was denied or withdrawn as to the majority of these incidents. (Trial Tr. 19-35.) The trial court did permit the prosecution, over Crowder's objection, to offer evidence of two prior altercations between Crowder and Ann Lewis.

At trial, the prosecution introduced the testimony of Police Officer Neil Johnson, who testified that on June 11, 1999, he was approached by Ann Lewis, who was followed shortly thereafter by Crowder. (Trial Tr. 510-11.) Lewis told Johnson that a few minutes prior Crowder had struck her on the head. (Trial Tr. 510.) She showed Johnson a protective order, and Johnson arrested Crowder. (Trial Tr. 512.) The prosecution also introduced evidence, through the testimony of Police Officer John Edwards, of an altercation that took place on October 31, 2000. According to Edwards, he responded to a call regarding a domestic disturbance early that morning. (Trial Tr. 520.) When he arrived he was met by Ann Lewis, who excitedly told him that her "boyfriend" had stabbed her with a screwdriver and poked her with pliers. (Trial Tr. 522.) Lewis then brought Edwards to a motel across the street where Crowder was located, and Edwards placed Crowder under arrest. (Trial Tr. 523-24.)

After the testimony of both officers, the trial court instructed the jury that the evidence of these altercations could not be considered proof of Crowder's "propensity or disposition to commit the crimes actually charged in this case." (Trial Tr. 517-18; 534.) The court instructed the jury that it could consider the evidence "only insofar as it tends to establish intent, identity,

5

and . . . as background information for you, the jury." (Trial Tr. 518; 534.)  The court repeated this instruction in its final charge. (Trial Tr. 804-05).

The Court is aware of no case in which the Supreme Court has held that the admission of uncharged crimes violates due process.   The Appellate Division's rejection of this claim therefore could not be "contrary to" or constitute an "unreasonable application of" "clearly established" Supreme Court precedent. *See Parker v. Woughter*, 2009 WL 1616000, at *2 (S.D.N.Y. June 9, 2009) ("Here, petitioner cites no Supreme Court case, and the Court is aware of none, holding that the admission of evidence of uncharged crimes violates the Due Process Clause of the Fourteenth Amendment."); *Jones v. Conway*, 442 F. Supp. 2d 113, 131 (S.D.N.Y. 2006) ("Given that the Supreme Court has not held that the use of uncharged crimes would violate the Due Process Clause, the Appellate Division's rejection of this claim is hardly either contrary to or an unreasonable application of clearly established Supreme Court law.").

Nor has Crowder established that admission of the prior acts was an "evidentiary error . . . so pervasive as to have denied him a fundamentally fair trial," as a petitioner must to obtain habeas corpus relief. *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985); *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998), *abrogated on other grounds by Perry v. New Hampshire*, 132 S. Ct. 716 (2012).  To begin with, admitting the evidence was not error at all under New York law.  It is well-settled that "[a] trial court may admit into evidence uncharged crimes when the evidence is relevant to a pertinent issue in the case other than a defendant's criminal propensity to commit the crime charged." *People v. Till*, 87 N.Y.2d 835, 836 (1995).  As respondent argues, the prior acts evidence in this case was at least admissible for purposes of establishing intent and for providing the jury relevant background material. *See, e.g., People v. Whitley*, 922 N.Y.S.2d 446,

6

447 (2d Dep't 2011) (holding evidence of prior acts of abuse admissible to establish intent and motive and to provide background information).

And even if admission of the prior acts evidence was error under state law, the overwhelming evidence against Crowder—including extensive eyewitness testimony—and the trial court's repeated limiting instructions preclude the conclusion that admission of the prior acts evidence was "so pervasive as to have denied him a fair trial." *See, e.g., Oakley v. Artuz*, 1999 WL 325362, at *2 (E.D.N.Y. May 18, 1999) (concluding in light of overwhelming evidence that admission of prior acts evidence did not deprive petitioner of due process); *Ayala v. Portuondo*, 75 F. Supp. 2d 194, 196 (S.D.N.Y. 1999) ("In view of the overwhelming evidence of [petitioner's] guilt, [the uncharged crimes] evidence cannot even if it had been erroneously admitted, be said to have denied [petitioner] a fair trial.").

Because the Appellate Division's decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent, the claim is denied.

*III.    Admission of Recording of 911 Call of Joseph Lewis*

Crowder's next claim is that the trial court's admission of a recording of a 911 call by Joseph Lewis violated the Confrontation Clause of the Sixth Amendment. This claim was raised on direct review (DE 13-2, Supp. Brief of Defendant-Appellant, at 28-32), and the Appellate Division denied it on the merits, *Crowder*, 782 N.Y.S.2d at 128. That decision is entitled to AEDPA deference.

At trial, the prosecution introduced a 911 call placed by Joseph Lewis,[1] who was Ann Lewis's father and a resident of 600 Chester Street, on March 30, 2000 at 12:49 a.m. During the call, which lasted fifty seconds, Mr. Lewis requested that the operator send police to 600 Chester

---

[1] Although the individual on the 911 call identifies himself as "Johnson," evidence was introduced at trial, and all generally agree, that the speaker is Joseph Lewis. *See* Trial Tr. 34; Trial Tr. 228.

Street. He stated that his "daughter's boyfriend" broke down his door "a couple of seconds ago," and that he "want[ed] him locked up." When the 911 operator asked whether the perpetrator was still at the location, Mr. Lewis replied that he did not know. Mr. Lewis died before Crowder's trial, so he was unavailable to testify. The trial court admitted the call under the hearsay exceptions for excited utterances and present sense impressions.

In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), which was decided after Crowder's trial but before the Appellate Division rejected his Confrontation Clause claim, the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." As *Crawford* and its progeny make clear, it is only out-of-court statements with a "testimonial character" with which the Confrontation Clause is concerned. *See Davis v. Washington*, 547 U.S. 813, 821 (2006).

Although the Supreme Court did not define "testimonial" in *Crawford*, it has provided guidance in subsequent cases. Generally, "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* at 821. Thus, in *Davis*, 547 U.S. 813 (a case comprised of two consolidated appeals, *Davis v. Washington* and *Hammon v. Indiana*), the Supreme Court held that statements made in *Davis* to a 911 operator while the complainant was still in danger were nontestimonial but that statements made in *Hammon* to a police officer and written in an affidavit after danger had dissipated were testimonial. Because the informal statements in *Davis* explained "events as they were actually happening" and "were necessary to be able to resolve the present emergency," they were nontestimonial. *Id.* at 827. By contrast, because the more formal statements in *Hammon* were

8

"neither a cry for help nor the provision of information enabling officers immediately to end a threatening situation," *id.* at 832, but rather "part of an investigation into possible criminal past conduct," *id.* at 829, they were testimonial.

The Supreme Court recently had occasion to apply *Davis* and *Hammon* in *Michigan v. Bryant*, 131 S. Ct. 1143 (2011). In *Bryant*, the statements at issue were made to the police by the mortally-wounded victim of a shooting as he lay dying in a gas station parking lot. *Bryant*, 131 S. Ct. at 1151. The victim explained to police that as he was leaving defendant Bryant's house, Bryant shot him through the door. *Id.* The victim told the police that after being shot he drove to the gas station where police found him. *Id.* Despite the fact that the statements were made at a location and time removed from the initial incident, the Court held that they were nontestimonial. The Court likened the situation to the "informal, harried 911 call in *Davis*." *Id.* at 1166. It also found significant, among other things, that the "[t]he police did not know, and [the victim] did not tell them, whether the threat was limited to him" and reasoned that thus "the potential scope of the . . . emergency in this case stretches more broadly than those at issue in *Davis* and *Hammon*." *Id.* at 1164.

*Davis*, *Hammon*, and *Bryant* establish that the 911 call introduced in this case was nontestimonial. Under those cases, "the relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Bryant*, 131 S. Ct. at 1156. Mr. Lewis's call took place in the middle of the night, just after Crowder had broken into his home and awakened him. As in *Bryant*, the 911 operator did not know, and Lewis did not tell her, who might be endangered by Crowder or whether that danger had dissipated. Indeed, Mr. Lewis stated that the

break-in had occurred "a couple of seconds ago," that he did not know if the intruder was still there, and that the intruder was his "daughter's boyfriend," indicating a strong likelihood that someone other than Mr. Lewis might be in danger.

Put simply, the 911 call was just the sort of harried, informal encounter designed "to enable police assistance to meet an ongoing emergency," which, "while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis*, 547 U.S. at 821. This conclusion is consistent with the emerging consensus that "[s]tatements properly classified as excited utterances are an archetype of the off-hand, non-testimonial statements that do not implicate the Confrontation Clause." *Branham v. Lee*, 2011 WL 5979530 at *6 (S.D.N.Y. Nov. 29, 2011); *see also United States v. Harper*, 2009 WL 140125, at *4 (W.D.N.Y. Jan. 20, 2009) ("Statements admitted as excited utterances . . . are nontestimonial and thus do not implicate the Confrontation Clause."); *Rivera v. Ercole*, 2007 WL 1988147, at *6 (S.D.N.Y. July 6, 2007) ("Excited utterances, generally, are not testimonial.").

In short, the Appellate Division's decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent.[2] The Confrontation Clause claim is denied.

## IV.    Ineffective Assistance of Trial Counsel

Crowder's next claim is that his trial counsel was ineffective for (1) failing to object to the trial court's burglary charge; (2) failing to object to the trial court's response to a jury question about the meaning of "intent"; (3) failing to object to the consolidation of the two indictments

---

[2] Crowder also argues that there are discrepancies between the statements Lewis made on the 911 call and statements he later made to the assistant district attorney. He appears to contend that these discrepancies render the 911 call unreliable and thus inadmissible. To the extent Crowder seeks to challenge admission of the 911 call as erroneous under state law, habeas relief is not available on that basis. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). To the extent Crowder challenges its admission as a violation of Due Process, the Court has little trouble concluding that its admission was not an error "so pervasive as to have denied him a fundamentally fair trial." *Collins*, 755 F.2d at 18. The prosecution introduced the testimonies of three of the apartment's occupants that corroborated Lewis' report to the 911 dispatcher that Crowder had broken down the door to the apartment in the middle of the night. (Trial Tr. 253-63 (testimony of Tyreese Morrison); Trial Tr. 281-97 (testimony of Steven Johnson); Trial Tr. at 350-72 (testimony of Argie Johnson)).

against Crowder; (4) permitting Crowder to be sentenced under the PFO statute; and (5) creating a conflict of interest by taking a position adverse to Crowder's defense. The first four of these claims were raised on direct appeal (DE 13-2, Supp. Brief of Defendant-Appellant, at 33-50), and the Appellate Division denied them on the merits, *Crowder*, 782 N.Y.S.2d at 128. The fifth was raised in a motion to vacate the judgment under N.Y. C.P.L. § 440.10 (DE 13-5, at 5-10), and was denied on the merits, *People v. Crowder*, 6 Misc.3d 625 (Kings Cty. Sup. Ct. 2004). These decisions are entitled to AEDPA deference.

The standard for ineffective assistance of counsel is supplied by *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, a petitioner must show that (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 694. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances," and "[t]here is a strong presumption that counsel's performance falls within the wide range of professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 384 (1986) (internal quotation marks omitted).

*1. Failure to Object to Burglary Instruction*

Crowder's first ineffective assistance claim is based on his trial counsel's failure to object to the trial court's instruction that a defendant is guilty of burglary "when he knowingly enters *or remains unlawfully* in a dwelling with the intent to commit a crime therein." (Trial Tr. 810-12 (emphasis added).) Crowder argues that this charge is error because it could mislead the jury to convict a defendant of burglary where he does not intend to commit a crime at the time of his unauthorized entry, but forms such intent while remaining unlawfully in the dwelling.

11

Crowder is correct that this instruction in the context of this case runs contrary to the Court of Appeals's holding in *People v. Gaines*, 74 N.Y.2d 358 (1989). Under New York law, "[a] person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein." *See* N.Y. Penal Law §§ 140.20, 140.25, 140.30. In *Gaines*, the Court of Appeals held that conviction for third-degree burglary—which proscribes the same conduct, in relevant part, as second-degree burglary—requires that the defendant possess the intent to commit a crime at the time of his entry into the building. The "remains unlawfully" language, the Court held, "plainly address[es] a different factual situation—not one of unlawful entry but of unauthorized remaining in a building after lawful entry (as a shoplifter who remains on store premises after closing)." *Id.* at 362. And where such a situation is clearly not implicated by the facts of a case, the Court concluded, "the court should not . . . refer[] to unlawful remaining in its burglary charge." *Id.* at 363. It seems a reasonable possibility that had Crowder's counsel raised this objection, the trial court would have adjusted his charge accordingly.

Assuming without deciding that Crowder meets the first prong of *Strickland*, he fails on the second in that the failure to object did not prejudice him. The risk identified in *Gaines*—that "[t]he jury could have concluded . . . that [the defendant] intended no crime when he broke into the building" but convicted him anyway—is absent here. Crowder was accused of entering the apartment at 600 Chester Street with the intent to harass and intimidate Ann Lewis, in violation the order of protection Ann Lewis held against him. Crowder stipulated at trial that this order of protection restrained him from such conduct. (Trial Tr. 493-94.) In addition to the 911 call from Joseph Lewis, the prosecution introduced the testimony of three of the apartment's occupants (Argie Johnson, Tyreese Morrison, and Steven Johnson) and a neighbor (Saleda Robinson),

12

which tended to show that Crowder had been looking for Ann Lewis since the previous day, was initially refused entry the night of March 30, broke down the door to the apartment, demanded to know where Ann Lewis was, and then dragged Ann Lewis out of the apartment. (Trial Tr. 350-72 (testimony of Argie Johnson); Trial Tr. 253-63 (testimony of Tyreese Morrison); Trial Tr. 281-97 (testimony of Steven Johnson); Trial Tr. 305-18 (testimony of Saleda Robinson)). A jury could not find from these facts that Crowder lacked the requisite criminal intent when he entered the apartment at 600 Chester Street.

The only evidence in the record from which the jury could have concluded that Crowder lacked the requisite intent to commit a crime at the time he entered the apartment was the testimony of Ann Lewis. Ms. Lewis denied the account of every other witness, testifying that she had invited Crowder into the apartment and left with him of her own free will. (Trial Tr. 626-30.) In finding Crowder guilty, however, the jury must necessarily have rejected most, if not all, of Ms. Lewis's testimony in favor of that of Argie Johnson, Tyreese Morrison, Steven Johnson, and Saleda Robinson. It is implausible that the jury credited Ms. Lewis's claim that she invited Crowder in—and therefore that he lacked criminal intent at the time of entry—but rejected her claim that she left with Crowder of her own accord, instead convicting Crowder on the basis of other testimony establishing that he formed criminal intent once inside. As such, because the trial court's misleading instruction could not have caused the jury to convict Crowder wrongfully, there is no reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Certainly, Crowder has failed to show that the state court's rejection of his ineffective assistance claim on this ground was so unreasonable that fairminded jurists could not disagree on the correctness of the state court's decision. *See Harrington*, 131 S. Ct. at 786 ("A state court's determination that a claim lacks merit precludes

federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.'" (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004))).

*2. Failure to Object to Response to Jury Question on "Intent"*

Relatedly, Crowder argues that counsel was ineffective for failing to object to the trial court's response to a note from the jury. The first line of that note read "Instructions regarding 'intent' not 'intent to harass or assault' element of Criminal Contempt –," which was followed by lines reading "-Premeditation? (intent @ time of entry)?" and "-Intent @ time of infliction of physical harm?" (Trial Tr. 837; DE 13-2, Resp's Supp. Brief on Direct App., at 18.) The trial court responded, "Intent means conscious objective or purpose. It may be formed at any time, as long as the actor possesses intent at the time he acts." (Trial Tr. 839.)

Crowder insists that the jury's question pertained to the burglary charge. He reads the note as asking whether the intent required for conviction of burglary must be formed at the time the defendant entered the dwelling, or whether a defendant may be guilty where the intent is not formed until after entry. And he reads the trial court's response as instructing the jury that it could find him guilty of burglary even if it found that he did not form criminal intent until after entry. As above, he argues that this runs contrary to *People v. Gaines*, 74 N.Y.2d 358. Respondent argues that the jury was asking about the intent element of criminal contempt, not that of burglary—i.e., whether, in order to be guilty of criminal contempt, the intent to assault or harass must be premeditated or whether it may be first formed at the time of assault.

Regardless of whose reading of the note is correct, the Court cannot conclude that counsel's performance was deficient for failing to divine the jury's meaning from what the Court views to be an ambiguous note. Further, even if counsel's failure to object to the trial court's response to the note were deficient, Crowder was not prejudiced because, as explained above, there was

virtually no risk based on the evidence in the record that the jury concluded that Crowder did not form the intent to commit a crime until after he entered 600 Chester Street, yet convicted him of burglary in any event.

*3. Failure to Object to Consolidation of Indictments or Move to Sever Charges*

Crowder's next ineffective assistance claim is that counsel's performance was deficient because counsel failed to contest consolidation of the two indictments against Crowder or to otherwise sever certain charges. Specifically, he contends that counsel should have objected to consolidation of or moved to sever the charges stemming from the March 30, 2000 break-in at 600 Chester Street and the three incidents on March 18, 2001 between Crowder and his mother, Crowder and Ann Lewis, and Crowder and Joseph Lewis. To attempt to establish prejudice, Crowder argues that consolidation (1) resulted in a conflict of interest for Ann Lewis, who Crowder says was a witness for him on the burglary charge but against him on the assault charge and (2) prevented him from testifying on his own behalf on the burglary charge. (DE 21-2, Petitioner's Traverse, at 19-21.) Crowder appeared to argue before the state court that he was unable to take the stand at the consolidated trial because his truthful testimony regarding the altercation with his mother would have contradicted his prior testimony before the grand jury, leading the jury to question his credibility. (DE 13-2, Supp. Brief of Defendant-Appellant, at 41-47.)

Crowder's claim is without merit. To begin with, the record flatly contradicts Crowder's contention that Ann Lewis testified for him on the burglary charge but against him on the assault charge. Ann Lewis in fact testified that she had instigated the March 18, 2001 altercation, that Crowder had acted in self-defense, and that she falsely reported the to the police that Crowder beat her. (Trial Tr. 631-34.)

15

Second, regardless of whether consolidation was properly permitted under New York law, Crowder has simply failed to show that any prejudice resulted from his not taking the stand. Crowder argues that had the burglary case been tried separately, he would have testified that he did not break in but went to the apartment on March 30, 2000 at Ann Lewis's behest and such testimony would have made a significant impact on the jury's decision.  (DE 21-2, Petitioner's Traverse, at 20-21.)  As an initial matter, Crowder's self-serving, post-conviction claim that he would have taken the stand in one case but not the other is not a claim a habeas court is required to credit.  And, in any event, Crowder's version of events was introduced at trial through Ann Lewis's testimony.  Taking the stand in his own defense would have exposed Crowder to cross-examination regarding his lengthy criminal history, according to the trial court's ruling in a *Sandoval* hearing conducted before trial.  (Trial Tr. 36.)  Accordingly, the Court simply cannot conclude that "there is a reasonable probability . . . the result of the proceeding would have been different" had trial counsel succeeded in severing the charges.  *Strickland*, 466 U.S. at 694.

*4. Failure to Provide Assistance at Sentencing*

Crowder's next claim of ineffective assistance of trial counsel is that counsel failed to adequately represent him at sentencing by failing to contest application of New York's PFO statute.  Crowder raised this claim in state court only with respect to his first sentencing, which was ultimately vacated by the Appellate Division.  As such, to the extent his claim here is predicated on counsel's assistance with respect to that sentence, he cannot establish prejudice.  To the extent he challenges counsel's assistance with respect to his resentence, which he does not appear to do, review of that proceeding reveals no defect in counsel's performance.

*5. Conflict of Interest*

16

Lastly, Crowder claims his trial counsel was ineffective because she labored under a conflict of interest. During the course of his case, but before trial, Crowder sought to substitute counsel three separate times. *People v. Crowder*, 6 Misc. 3d at 626. The first two substitutions were granted, but the trial court denied the third, finding that Crowder's requests were dilatory and in bad faith.[3] *Id.* Sometime after trial began, Crowder filed a grievance against his trial counsel, to which counsel responded. *Id.* The trial court declined to grant Crowder new counsel in the middle of trial on the basis of his grievance, noting that defense counsel "did a good job." (Trial Tr. 342-44.) In his subsequent N.Y. C.P.L. § 440.10 motion to vacate, Crowder raised the claim he raises here on habeas—that trial counsel's response to his grievance created a conflict of interest, which denied him effective assistance of counsel. (DE 13-4, Pet. Mot. to Vacate, at 38-43.) The trial court denied Crowder's motion to vacate, finding that it was "clear the filing of a grievance was calculated to create a conflict of interest where none existed." *People v. Crowder*, 6 Misc. 3d at 626. The trial court further found:

> Defense counsel presented a cogent and meaningful defense, thoroughly cross-examined witnesses, made proper objections and gave a carefully reasoned summation to the jury. Any minor omissions were not shown to have any strategic value and did not compromise the defense. Consequently, defendant has not shown that counsel's representation fell below an objective standard of reasonableness.

*Id.* at 627 (internal quotation marks omitted). The Appellate Division denied leave to appeal. (DE 13-5, at 67.) The decision of the state trial court is entitled to AEDPA deference, and Crowder has not shown that the rejection by the state court of his conflict claim was either contrary to or an unreasonable application of clearly established Supreme Court precedent.

"Where a constitutional right to counsel exists, [the U.S. Supreme Court's] Sixth Amendment cases hold there is a correlative right to representation that is free from conflicts of

---

[3] Parts of the record indicate that, contrary to the state court opinion, Crowder sought to substitute counsel twice and was granted new counsel once. (*See* Trial Tr. 343; DE 13-5, at 29.) This discrepancy does not affect the Court's analysis.

interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981).  Although a defendant alleging a Sixth Amendment violation must usually demonstrate prejudice resulting from the violation under *Strickland v. Washington*, 466 U.S. 668 (1984), when a defendant demonstrates an "actual conflict of interest," prejudice is presumed.  *Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980).  "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."  *Mickens*, 535 U.S. at 172 n.5; *see id.* ("[T]he [*Cuyler* v.] *Sullivan* standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect."); *Eisemann v. Herbert*, 401 F.3d 102, 107 (2d Cir. 2005) (stating that an actual conflict and adverse effect should be considered in a "single, integrated inquiry").  "To demonstrate adverse effect, a defendant must establish that an 'actual lapse in representation,' resulted from the conflict."  *Winkler v. Keane*, 7 F.3d 304, 309 (2d Cir. 1993) (quoting *Cuyler*, 446 U.S. at 336).

Conflicts of interest exist "when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action."  *United States v. John Doe No. 1*, 272 F.3d 116, 126 (2d Cir. 2001) (internal quotation marks omitted).  Such divergences in interest have been found where, for example, counsel was personally implicated in wrongdoing related to the case, *United States v. Levy*, 25 F.3d 146 (2d Cir. 1994), or accused of coercing his client's guilty plea, *Lopez v. Scully*, 58 F.3d 38 (2d Cir. 1995).  In such situations, counsel's and the client's interests diverged because the attorney, "fearing answers that might incriminate himself, . . . would have a strong personal desire to refrain from inquiring at the defendant's trial into certain matters that were directly relevant to, and potentially exculpatory of, his client."  *Levy*, 25 F.3d at 157; *see Lopez*, 58 F.3d at 41 (noting the tension requiring the attorney either to admit to serious ethical violations possibly amounting

to malpractice or contradict his client in a manner that would undermine the client's effort to overturn his conviction). No such divergent interests are apparent here.

A defendant does not "establish an actual conflict of interest merely by 'expressing dissatisfaction with [the] attorney's performance,'" *John Doe No. 1*, 272 F.3d at 126, nor does a conflict "necessarily arise every time that an attorney responds to allegations of incompetent representation or contradicts his client in open court." *United States v. Moree*, 220 F.3d 65, 71 (2d Cir. 2000). Crowder has failed to show that counsel's interests diverged from his with regard to a material factual or legal issue in the case.

This case is analogous to *United States v. O'Neil*, in which the Second Circuit concluded that a fee dispute between an attorney and client (that led to two civil suits filed by the attorney against his client during the course of the representation) did not create a conflict of interest. 118 F.3d at 70-72. The Second Circuit noted that it had never "held that failure to pay fees or an attorney's motion to withdraw for his client's failure to pay, without more, gives rise to a conflict of interest" and stated that though "a defendant's failure to pay fees may cause some divisiveness between attorney and client . . . we presume that counsel will continue to execute his professional and ethical duty to zealously represent his client, notwithstanding the fee dispute." *Id.* at 71. The Court also determined that the civil suits and attendant default judgments did not create any divergence of interest between the defendant and counsel because, as a practical matter, the lawyer was less likely to be paid if the defendant was convicted. *Id.* at 72.

Similarly, here, the Court finds that as a practical matter, the filing of a grievance would, if anything, motivate an attorney to perform better in order to discredit the grievance. There exists no tension such as that present in *Levy* or *Lopez* where an attorney's interest in self-preservation is at odds with the client's interests. As noted in *O'Neil*, there should be a presumption that

19

counsel "will continue to execute [her] professional and ethical duty to zealously represent [her] client" notwithstanding her personal feelings. 118 F.3d at 71.

Even had Crowder articulated a potential conflict of interest, he has wholly failed to demonstrate any resulting lapse in representation due to the alleged conflict. "To prove the lapse in representation, a defendant must demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict or not undertaken due to the attorney's other loyalties or interests." *Eisemann*, 401 F.3d at 107. Crowder makes no such showing. Crowder argues that as a result of counsel's alleged conflict of interest, counsel failed to cross-examine Tyreese Morrison and Saleda Robinson concerning prior statements to the police that were allegedly inconsistent with their trial testimony. (DE 21-2, Petitioner's Traverse, at 13-15.) Even assuming the highly dubious proposition that these purported errors were significant, there is no showing that failure to make these inquiries on cross examination was in any way tied to bias as distinguished from oversight. Because Crowder has failed to show both that counsel actively represented conflicting interests and that any alleged conflict adversely affected his representation, the Court finds no actual conflict of interest. Thus, the state court decision finding no conflict of interest was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

As no actual conflict of interest is present in this case, the traditional *Strickland* test for ineffective assistance of counsel applies to Crowder's claim. The Court finds that counsel's failure to cross-examine Morrison and Robinson regarding prior inconsistent statements does not amount to ineffective assistance under *Strickland*. First, only Robinson's statement can realistically be considered inconsistent. As to Morrison, Crowder claims that she told police that she was sleeping at the time Crowder arrived at the apartment and that she awoke when she

20

heard commotion.  This does not appear to contradict Morrison's trial testimony at all, during which Morrison stated that she was in her sister's bed, that she heard banging, and that Crowder was in the apartment by the time she left the bedroom.  With respect to Robinson, Crowder alleges that she told police after the incident that she did not see anything and that Tyreese Morrison came downstairs to call 911.  Crowder argues that this contradicts Robinson's testimony that she saw Crowder drag Ann Lewis out of the apartment and conflicts with the fact that Joseph Lewis made a 911 call.  There is no serious dispute that Joseph Lewis made a 911 call, nor is there any reason to believe that Robinson's prior statement that Tyreese Morrison also came to her apartment to call 911 somehow undermines that fact or Robinson's credibility.

Robinson did, however, state to the police that she did not see anything "but she did hear yelling in the hallway."  She stated she "heard some man saying 'Come on Bitch' and some female saying 'Okay . . . Okay.'"  (DE 13-5, Police Report, at 35.)  This is inconsistent with Robinson's testimony that she personally saw Crowder drag Ann Lewis out of the apartment. However, in light of the high threshold established by *Strickland* for deficient performance (that counsel made "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," 466 U.S. at 686), the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689, and the added layer deference given to state court rulings under AEDPA, *see Harrington*, 131 S. Ct. at 788, the Court cannot conclude that the failure to ask this one question on cross-examination amounted to deficient performance or, more pertinently, that the state court decision finding counsel effective was contrary to or an unreasonable application of *Strickland*.  And even assuming counsel's performance was deficient, no prejudice resulted.  Even had counsel drawn out the question on cross examination, Robinson's prior statements to the police would hardly

have helped Crowder's case. The prosecution presented three other eyewitnesses who testified that Crowder dragged Ann Lewis out of the apartment, and Robinson's prior statements were still consistent with the prosecution's overall theory that Crowder acted abusively towards Ann Lewis.

In sum, whatever counsel's personal feelings towards Crowder, trial counsel abided by her professional obligation to zealously advocate for her client, performed admirably in mounting a vigorous defense in a difficult case, and successfully preserved Crowder's best appellate arguments. The Court finds no basis to conclude that a purported conflict of interest deprived Crowder of the effective assistance of counsel, under either *Cuyler* or *Strickland*.[4]

None of Crowder's five grounds for ineffective assistance of counsel has merit. Accordingly, the state court decisions denying them are neither contrary to nor do they involve an unreasonable application of clearly established Supreme Court precedent.

V.     *Ineffective Assistance of Appellate Counsel*

Crowder next claims that he was deprived of the effective assistance of appellate counsel in violation of the Sixth Amendment. Crowder's appellate counsel filed a lengthy and thorough brief challenging both the trial court's admission of evidence of Crowder's prior uncharged altercations with Ann Lewis and the constitutionality of New York's PFO statute. Crowder nevertheless challenges her performance on six grounds, all of which were presented to the Appellate Division in Crowder's petition for a writ of error coram nobis (DE 13-6, at 13-27), and which the Appellate Division denied on the merits, *People v. Crowder*, 866 N.Y.S.2d 879 (2d Dep't 2008). These decisions are entitled to AEDPA deference.

---

[4] Crowder also argues that his counsel became a witness against him by airing her personal views in her letter response to Crowder's grievance. As there is no indication that the jury saw the letter or that counsel expressed any of those views in open court, the Court rejects this claim.

Claims of ineffective assistance of appellate counsel are evaluated under the *Strickland* standard. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). A petitioner must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. It is well-settled that "[a]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* at 288. "[A] petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). To demonstrate prejudice for such an error, a petitioner must establish "that there was a reasonable probability that his claim would have been successful before the state's highest court." *Id.* at 534 (alterations omitted).

The first and second grounds Crowder advances for his ineffective assistance of appellate counsel claim are that counsel failed to raise on appeal the prosecution's introduction, before the grand jury and at trial, of the order of protection against Crowder. Crowder claims that on the same day the prosecution presented the order of protection to the grand jury, the underlying case was dismissed and the case file sealed pursuant to N.Y. C.P.L. § 160.50.

Respondent points to the People's response to Crowder's petition for a writ of error coram nobis, in which the People noted that the order of protection was sealed on the same day Crowder was indicted of the burglary offense—April 21, 2000—and thus the order was not yet sealed when the prosecution presented its case to the grand jury. (DE 13-6, Defendant's Criminal History, at 51; DE 13-3, Indictment, at 18; DE 14-2, Affirmation in Response to Coram Nobis Application, at 7.) Regarding the prosecution's introduction of the protection order at

23

trial, Respondent again incorporates by reference the People's response to Crowder's petition for a writ of error coram nobis, in which the People point out that the prosecutor had obtained a judicial order to unseal the records of four criminal dockets, including the one involving the protection order. (DE 14-2, Ex Parte Order, at 11.)

Crowder has not made a clear showing either that the protective order was in fact sealed at the time of the grand jury presentment or that the protective order was unsealed in error. In fact, whether records could be unsealed on an ex parte motion by the district attorney was not clearly settled at the time Crowder's appellate brief was filed in 2003. *See Matter of Katherine B. v. Cataldo*, 5 N.Y.3d 196 (2005) (holding that N.Y. C.P.L. § 160.50 did not permit a prosecutor to have a record unsealed merely upon an ex parte motion demonstrating that justice so required). Thus, the Court cannot find appellate counsel deficient for failing to raise the issue on appeal.

Further, even assuming such failure was deficient, the Court finds no prejudice. Even had appellate counsel raised the issue, introduction of the order of protection would not have warranted reversal. In *People v. Patterson*, 78 N.Y.2d 711, 714 (1991), the New York Court of Appeals held that the use of a photograph from a sealed file in an identification procedure, in violation of § 160.50, did not require suppression of resulting identification evidence. Noting that it has imposed the sanction of suppression for statutory violations "only where a constitutionally protected right was implicated," the Court of Appeals found that the legislative history of C.P.L. § 160.50 "does not at all support an intent on the part of the Legislature to create a constitutionally derived right." *Patterson*, 78 N.Y.2d at 716-17. Rather, the Court found that the statute and related legislation intended to provide a civil remedy for violations of C.P.L. § 160.50 and that "the violation of that statute, without more, would [not] justify

24

invocation of the exclusionary rule with respect to subsequent independent and unrelated criminal proceedings." *Id.* at 716.

In *People v. Torres*, 738 N.Y.S.2d 312 (1st Dep't 2002), the Appellate Division, First Department, applied *Patterson* to hold that a photograph from a sealed file, ostensibly obtained in violation of § 160.50, was properly admitted as evidence of guilt at a trial, and therefore that its introduction did not warrant reversal. Because Crowder's § 160.50 claims were against the weight of precedent, the Court cannot conclude that counsel was unreasonable for omitting them on appeal or that Crowder was prejudiced from the omission.

Crowder's third ground for ineffective assistance of appellate counsel is that counsel failed to raise on appeal the prosecution's argument during summation that the jury could convict Crowder merely for entering 600 Chester Street with the intent to violate an order of protection. It is true, as Crowder argues, that a defendant cannot be convicted of burglary for mere intentional entry in violation of an order of protection. *See People v. Lewis*, 5 N.Y.3d 546, 551 (2005). The prosecution generally must at least establish that the defendant entered with intent "to harass, menace, intimidate, threaten, or interfere with" a person in violation of the order of protection. *Id.* at 552-53.

In context, however, it is highly unlikely that the comments about which Crowder complains actually led the jury down this path. The prosecution told the jury

> Now the Court will also talk to you about when you enter knowingly and unlawfully, it's with intent to commit a crime. You're not going to hear Judge D'Emic say it has to be any particular crime, just that you have to enter unlawfully with the intent to commit a crime.
>
> In this case, pick one, pick anyone you like. We have several. Violation of the order of protection, the criminal mischief to the locks, downstairs and upstairs . . . . The harassment of her by grabbing her by the hair, the assault on her by dragging her down the steps with her body bouncing on each step. Pick anyone of those. The Court will never tell you that it has to be any specific crime.

25

What does this boil down to, ladies and gentlemen, plain simple English. The crime of burglary is completed when he breaks through the first door, goes upstairs and breaks through the lock to the second door, enters there with the intent to violate the order, with the intent to say, "Bitch, where's my damn money?" Goes over to her grab her by the hair and drag her out and drags her down the stairs, throws her in the car and takes her to 316 Hart Street, where she is found 36 hours later, all injured and cut up, as you see in these pictures.

(Trial Tr. 787-88.) In light of the evidence presented in this case, that the jury would have construed this argument as not requiring a showing of intent upon entry to harass and intimidate is extremely implausible. Because a claim predicated on it would have failed, appellate counsel's decision to omit this claim from her brief on direct appeal was reasonable.

The fourth ground Crowder has advanced for his ineffective assistance of appellate counsel claim is that counsel failed to raise on appeal the prosecution's cross-examination of Ann Lewis about prior instances of abuse, which Crowder argues were related to cases the trial court improperly unsealed. As explained above, whether unsealing records upon ex parte motion by the prosecutor was error was not firmly established until the New York Court of Appeals's decision in *Katherine B. v. Cataldo*, 5 N.Y.3d 196 (2005), issued after Crowder's appeal was denied. Further, also as explained above, a violation of § 160.50 does not mandate reversal on appeal. Accordingly, it was not unreasonable for appellate counsel to have attacked introduction of evidence of Crowder's prior bad acts on the firmer basis afforded by the well-settled case law concerning introduction of evidence of uncharged crimes.

Crowder's fifth ground for his ineffective assistance of appellate counsel claim is that counsel failed to raise on appeal that the prosecution's cross-examination of Ann Lewis was broader in scope than that permitted by the trial court's ruling at the pre-trial *Molineaux* hearing. The trial court's *Molineaux* ruling, of course, concerned only which evidence of uncharged crimes the prosecution could introduce in its direct case. It in no way limited the matters the

26

prosecution was permitted to address on cross-examination of defense witnesses. Indeed, the trial court expressly permitted the prosecution to question Ann Lewis on other prior altercations between her and Crowder. (Trial Tr. 414). Nor was this latter ruling in error, as the prosecution's questions were clearly relevant to Ann Lewis's credibility. Because this claim would have failed if advanced on appeal, appellate counsel was not ineffective for deciding not to raise it.

Lastly, Crowder faults appellate counsel for failure to raise on appeal trial counsel's ineffective assistance to the extent trial counsel failed to preserve the above claims. Because none of the claims has merit, Crowder could not have suffered prejudice from either trial counsel's failure to preserve the claims or appellate counsel's decision not to raise trial counsel's decision not to object.

The Appellate Division's decision that Crowder was not deprived of effective assistance of appellate counsel was not contrary to or an unreasonable application of clearly established Supreme Court precedent. His claim is therefore denied.

VI.    *Constitutionality of New York's Persistent Violent Felony Offender Statute*

Crowder next claims that New York's persistent violent felony offender statute, N.Y. Penal Law § 70.08(1), under which he was sentenced, violates the Sixth Amendment. Crowder raised this claim on direct appeal as well as appeal from resentencing, and the Appellate Division found it to be without merit. *People v. Crowder*, 848 N.Y.S.2d 886 (2d Dep't 2008). That decision therefore is entitled to AEDPA deference.

Under New York's persistent violent felony offender statute, a defendant who has been convicted of a violent felony as defined in NY Penal Law § 70.02 and has previously been convicted of two or more violent felonies as defined in § 70.04(1)(b) is subject to a mandatory

27

enhanced sentencing range.[5]   Crowder contends that the question of a defendant's status as a persistent violent felony offender (that is, the fact of at least two prior violent felony convictions, *see People v. Rosen*, 96 N.Y.2d 329, 335 (2001)) must be submitted to a jury and proven beyond a reasonable doubt pursuant to the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).   *Apprendi*, however, explicitly carved out an exception for the fact of a prior conviction: "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."   530 U.S. at 490 (emphasis added).   Thus, the Appellate Division's determination that New York's persistent violent felony offender is constitutional was not contrary to or an unreasonable application of clearly established Supreme Court precedent.   *See Quan v. Potter*, No. 06-CV-4841, 2007 WL 3223217, at *7 (E.D.N.Y. Oct. 29, 2007) ("[A]n enhancement based on § 70.08 relies solely upon the court's finding of the qualifying prior convictions.   The enhancement thus falls within the exception to the *Apprendi* rule."); *cf. Portalatin v. Graham*, 624 F.3d 69, 88-94 (2d Cir. 2010) (en banc) (holding that New York state courts' application of New York's discretionary PFO statute was not contrary to or an unreasonable application of the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny).

VII.   *Improper Application of Persistent Felony Offender Statute*

Crowder also claims that the state court improperly applied the PFO statute to him.   The sentencing court adjudicated Crowder a persistent violent felony offender on the basis of two prior violent felony convictions.   Although the second of these convictions was for robbery in the

---

[5] New York Penal Law also contains a counterpart provision providing for enhanced sentencing of persistent felony offenders who do not qualify as persistent *violent* felony offenders. See N.Y. Penal Law § 70.10.   Enhanced sentencing under this provision, however, is discretionary.

second degree, a violent felony, it appears the sentence Crowder received upon his guilty plea was consistent with a non-violent offense. Crowder testified at sentencing that he would not have pleaded guilty had he known he was pleading to a violent felony, and his counsel argued that because of the lenient sentence, the second degree robbery should not be considered a violent offense for purposes of the PFO statute. (Resentencing Tr. 2-8). The sentencing court found Crowder's testimony not credible and rejected counsel's argument, sentencing Crowder as a persistent violent felony offender. (Resentencing Tr. 8-11). This sentence was affirmed on appeal.

Crowder alleges only an error of state sentencing law. It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal quotation marks omitted). As other Courts in this Circuit have held, a "petitioner [who] contends simply that the state court's determination of his persistent violent felony offender status is wrong . . . raises a state law issue not appropriate to a habeas corpus petition, which may raise only constitutional issues." *Jerrel v. Keane*, 1995 WL 653369, at *3 (S.D.N.Y. Nov. 7, 1995); *see also Rodriguez v. Williamson*, 2007 WL 2274255, at *5 (S.D.N.Y. Aug. 2, 2007); *Wright v. Rivera*, 2007 WL 4264547, at *3 (E.D.N.Y. Nov. 30, 2007). Crowder is therefore not entitled to relief on this claim.

## VIII.   *Citation to Incorrect Penal Code Section in Indictment*

Crowder's final claim, which he alternately styles a jurisdictional challenge and an ineffective assistance of counsel claim, is based on the indictment's incorrect citation to N.Y. Penal Law § 215.15, the witness intimidation statute, in the charge for criminal contempt. Crowder has never raised this claim in state court so it is unexhausted. Because he can no longer bring the claim in state court, however, it is deemed exhausted but procedurally defaulted, and

29

therefore is denied. *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004).   Even if the Court

could review the claim, it would reject it on the merits.   Crowder has provided no Supreme Court

authority, and the Court is aware of none, clearly establishing that a mistaken citation renders an

otherwise adequate indictment constitutionally infirm.   Nor can the Court conclude that had trial

counsel pointed out the erroneous citation, "there is a reasonable probability that . . . the result of

the proceeding would have been different." *Strickland*, 466 U.S. at 694.   Crowder's final claim

is therefore denied.


## CONCLUSION

For the above reasons, Crowder's petition for a writ of habeas corpus is denied.   Since

Crowder has not made "a substantial showing of the denial of a constitutional right," no

certificate of appealability shall issue. 28 U.S.C. § 2253(c).   The Clerk of Court shall enter

judgment accordingly and close this case.


SO ORDERED.

Dated:   Brooklyn, N.Y.
       November⎸   , 2012

                               s/Carol Bagley Amon

                               Carol Bagley Amon
                               Chief United States District Judge